

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 4200 | **DATE** | 10/13/2004 |
| **CASE TITLE** | Dorothy Clemons vs. Jo Anne Barnhart | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's motion to reverse the final decision of the Commissioner is DENIED and Defendant's motion for summary judgment is GRANTED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | Document Number |
|---|---|---|---|
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | OCT 1 4 2004 | |
| | Notified counsel by telephone. | date docketed | 22 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | 2004 OCT 13 PM 5:34 date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
OCT 1 3 2004
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

DOCKETED
OCT 1 4 2004

DOROTHY CLEMONS,

    Plaintiff,

v.

JO ANNE BARNHART, Commissioner
of Social Security,

    Defendant.

Case No. 03 C 4200

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

This case arises out of the final decision of the Commissioner of Social Security (hereinafter, the "Commissioner") denying Plaintiff's application for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") under 42 U.S.C. §§ 416(i), 423, and § 1382(c)(3)(A). Before the Court is Plaintiff's motion to reverse the final decision of the Commissioner and Defendant's motion for summary judgment. The Court treats Defendant's motion as a motion for an order affirming the Commissioner's decision. For the following reasons, the Court **denies** Plaintiff's motion and **grants** Defendant's motion.

## I. BACKGROUND

Plaintiff Dorothy Clemons applied for DIB and SSI on March 9, 2000, alleging disability that began on June 8, 1995. Plaintiff's claims were denied initially on October 10, 2000. Plaintiff's

application for reconsideration was denied on March 23, 2001. Subsequently, Plaintiff was granted a hearing before an Administrative Law Judge (the "ALJ") on April 12, 2002. The ALJ conducted a de novo review of Plaintiff's claim and issued a written opinion denying Plaintiff's application for DIB and SSI on February 11, 2003. The Appeals Council declined Plaintiff's request for review. Consequently, the ALJ's decision became final and Plaintiff filed the instant action seeking judicial review.

### A. Vocational and Medical History

Plaintiff has ten years of education. She has not worked since 1995, but was previously employed as a packer (roper) at a meat packing company from 1977 to 1995. Plaintiff also worked as a cashier and stocker in a shoe store.

On November 10, 1995, Plaintiff was involved in a motor vehicle accident and went to the emergency room for pain in her right thigh, knee, back and buttocks. (R. 146-49). Plaintiff's C-spine and neurology examination were normal, but she was diagnosed with a knee and finger contusion.

Since the accident in 1995, Plaintiff has frequently sought medical attention for a variety of alleged medical ailments, primarily relating to pulmonary infections and back and hand pain. On January 10, 2000, Plaintiff was seen for chills and a sore throat. She was not taking any medications at the time. Her physician indicated that she was not obese, and described her as a

woman who "enjoyed general good health with a history of pneumonia approximately three years ago." (R. 154, 159). Plaintiff was diagnosed with right upper lobe pneumonia, nonspecific bronchial hyperactivity, influenza and arthritis in her left knee. In late January, tests revealed that Plaintiff had a minimal obstructive lung defect and a mild decrease in diffusing capacity. Plaintiff said she felt better in a follow-up visit.

On May 10, 2000, at the request of the Bureau of Disability Determination Services (the "DDS"), Plaintiff was examined by Dr. Roopa Karri. (R. 194-97). Plaintiff complained to Dr. Karri that she had arthritis of the knees and hands for the past 7 years. After examining Plaintiff, Dr. Karri reported that "the claimant has no problems with dressing, cleaning or toileting. She drives and shops rarely. She cooks quick meals. She can stand and sit. She cannot walk even a block without getting short of breath. She can go up 3-4 stairs at a time. She can pick up a coin from the ground." (R. 195). Dr. Karri determined that Plaintiff could "walk 50 feet without support. She can stand on his [sic] heals and toes and squat. She can get off and on the table with no problem . . . Hips, ankles, cervical spine, knees, lumbar spine; normal." (R. 196). Although Dr. Karri indicated that Plaintiff's grip strength was reduced to 4/5 in right hand, he determined that she didn't need an assistive device because she is left-handed. Dr. Karri also concluded that her neurologic and mental status

examinations were normal, and there were "no signs of depression, agitation, irritability or anxiety." Id. Dr. Karri's Clinical Impressions were as follows: "Problem #1: Asthma and emphysema; Problem #2: Arthritis of the knees, wrists and hands; Problem #3: Hypertension; Problem #4: History of recent pneumonia." Id.

On July 17, 2000, Dr. Virgilio Pilapil prepared a Physical Residual Function Capacity Assessment for Plaintiff. This report concluded that Plaintiff's exertional limitations were lifting twenty pounds occasionally, ten pounds frequently, standing and/or walking and/or sitting for six hours in an eight-hour day, and unlimited pushing and pulling. Her postural limitations were that she should only occasionally climb, kneel, or crawl, but that she could frequently balance, stoop, and crouch. Plaintiff's environmental limitations were unlimited except for the avoidance of fumes, odors, dusts, gases and poor ventilation. (R. 211, 213).

In August, Plaintiff was seen for a follow-up visit where she reported that she had no chest pain, cough, palpitations or edema. Plaintiff's chest x-ray was within normal limits. (R. 205). On May 2, 2001, Dr. Liske diagnosed Plaintiff with acute bronchitis. Her asthma was controlled. (R. 227). Dr. Liske continued to examine Plaintiff throughout 2002. On January 9, 2002, Plaintiff had a Spirometry test that revealed a mild obstruction with small airway response but no air trapping. (R. 230). On January 14, 2002, she was diagnosed with a cough and bronchitis. On March 18,

2002, Plaintiff was seen by the doctor for complaints of back pain. On April 10, 2002, two days before the hearing, Plaintiff had an MRI, which revealed mild back problems. Specifically, the MRI revealed . . . "mild disc bulging with possible tiny central disc protrusion and mild facet degenerative . . . caus[ing] mild central stenosis and minimal, if any, left sided neural foraminal narrowing . . . asymmetric left side disc bulging . . . that does not cause significant stenosis . . . disc desiccation . . . without herniation." (R. 231-232).

### B. ALJ Hearing

The ALJ conducted a hearing on April 12, 2002 to review Plaintiff's application for DIB and SSI. The ALJ questioned Plaintiff at length regarding her various health-related complaints, which primarily consisted of asthma, and knee, back and hand pain. Plaintiff testified that she had not been hospitalized for her asthma and had not had many asthma flare-ups because she was prescribed medicine. She testified that, despite telling her doctor otherwise, she smokes four cigarettes a day. She indicated her knee was in constant pain and it grew worse in cold weather. Plaintiff testified that her back pain has become worse over the past year and she takes any available pain medicine to relieve her back pain. Plaintiff does not use a cane for either her back or knee pain. Plaintiff, who is left-handed, testified that she had right-hand pain, but she told the ALJ that such pain did not

prevent her from using her hand. (R. 42). Plaintiff estimated that she could walk about two hundred feet, stand for about thirty minutes, sit for about twenty minutes, and reach over head with her right arm. (R. 45). Plaintiff testified that she cooks, washes dishes, cleans, dusts, does laundry, talks on the phone, does personal grooming, visits with people, attends church, and goes out to eat. (R. 45-48).

The ALJ also interviewed William Schweihs, a vocational expert (the "VE"). The VE testified about Plaintiff's previous work experience, classifying her roper-work as heavy and her cashier-work as light. The ALJ asked the VE:

> Q. . . . Let's assume we had a person the same age, education, and work experience as the claimant and that person had residual functional capacity for light work with the following restrictions. They could only occasionally climb anything, kneel or crawl, and they would have to avoid concentrated, prolonged exposure to pulmonary irritants, fumes, odors . . . Would that person be capable of performing claimant's past work? (Tr. 59).

The VE testified that such a person could perform other packing positions and other industrial positions, as well as cashier work at a light level, which are all unskilled jobs. The VE estimated that there were 7,000 roping (packing) jobs at the light-level and in excess of 10,000 cashier jobs at the light-level in the metropolitan Chicago area that would adhere to the limitation criteria outlined above. (R. 59-60). The VE also

confirmed that his testimony was consistent with the information contained in the Dictionary of Occupational Titles.

### C. ALJ Decision

After a hearing and a thorough review of the record, the ALJ issued a written opinion denying Plaintiff's DIB and SSI application on February 11, 2003. The ALJ addressed the issue of whether Plaintiff was under a "disability" as defined under the Social Security Act (20 C.F.R. § 404.1520(a) and 416.905(a)) (the "SSA"). The ALJ conducted the five-part evaluation process required by 20 C.F.R. § 404. Although the ALJ determined that Plaintiff had severe osteoarthritis and asthma, the ALJ concluded that such impairments are not "attended with the specific clinical signs and diagnostic findings requirement to meet the requirements of the Listing of Impairments." (R. 13).

The ALJ reviewed Plaintiff's medical history, including her subjective complaints and objective medical evidence, and concluded that Plaintiff's subjective allegations were not credible. As described more fully in the discussion section, there was at least one instance where Plaintiff may have been less than forthcoming or provided incomplete information to a treating physician. In addition, Plaintiff's subjective reports of pain were not consistent with the underlying medical record. The ALJ noted that Plaintiff had a residual function capacity ("RFC") for light work and standing for up to six hours of an eight-hour day, without

- 7 -

exposure to pulmonary irritants. Although Plaintiff could no longer perform her heavy work as a roper, the ALJ concluded that the Commissioner had met its burden to "show that there are other jobs, existing in significant numbers in the national economy, that the claimant can perform, consistent with her RFC, age, education, and work experience." (R. 14). The ALJ, relying on the VE's testimony, determined that the Plaintiff has the mental and physical ability to do a significant number (an estimated 7,000 packing jobs and 10,000 cashier jobs) in the metropolitan Chicago area alone. Consequently, the ALJ held that Plaintiff had not been under a "disability" at any time relevant to the decision, and accordingly the ALJ denied Plaintiff's application for DIB and SSI.

The ALJ's decision became the final decision of the Commissioner when the Appeals Counsel declined Plaintiff's request for review. Plaintiff now seeks to reverse the Commissioner's decision and Defendant seeks to affirm the Commissioner's decision.

## II. **LEGAL STANDARD**

The Court is limited to reviewing only whether the record contains substantial evidence to support the agency's decision, and whether the agency applied proper legal standards. See Ehrhart v. Secretary of Health and Human Services, 969 F.2d 534, 538 (7th Cir. 1992). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). A reviewing court

will not "re-evaluate the facts, reweigh the evidence, or substitute [its] own judgment for that of the Secretary." Luna v. Shalala, 22 F.3d 687, 689 (7th Cir. 1994).

### III. DISCUSSION

An individual is "disabled" if he "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). Further, a person is "under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." Id. § 1382c(a)(3)(B).

Pursuant to 20 C.F.R. § 404.1520, the ALJ conducts the following five-part inquiry to determine whether a claimant is "disabled." First, the ALJ determines if the claimant is performing substantial gainful activity. Second, the ALJ determines whether the claimant has a severe medically-determinable physical or mental impairment for the duration requirement. Third, the ALJ determines whether the claimant's severe medically determinable physical or mental impairment meets or equals one of the listings of Appendix 1 and the duration

requirement. Fourth, the ALJ assesses the claimant's RFC and past relevant work. If the ALJ determines that the claimant can still do his/her past relevant work, the claimant is not disabled. Finally, the ALJ assesses the claimant's RFC, age, education, and work experience to see if claimant can make an adjustment to other work, and if so, the claimant is not disabled.

Plaintiff alleges that the Commissioner's decision should be reversed because the ALJ was patently wrong in his subjective credibility conclusion, step-three analysis, and step-four determination. Plaintiff first alleges that the ALJ was wrong in concluding that Plaintiff's subjective allegations were not credible and was not sufficiently specific. Defendant responds that the ALJ's credibility determination should be upheld because it was supported by the record. Defendant argues that the ALJ reasonably considered that Plaintiff lied to her consultative examiner about her smoking habit . . . [which] weighed adversely on her credibility." (Mem. In Opp. At 13). Further, the ALJ reasonably considered that Plaintiff had not sought medical treatment for her alleged disabling knee pain since 1995, and that Plaintiff testified that her asthma was under control.

The Plaintiff correctly notes that an ALJ's credibility determination will only be disturbed if patently wrong. The determination of subjective credibility must "contain specific reasons for the finding on credibility, supported by the evidence

in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewer the weight the adjudicator gave to the individuals' statements and the reasons for the weight." Griffin v. Calahan, 138 F.3d 1150, 1152 (7th Cir. 1998). Here, the ALJ cited the following specific reasons for his conclusion that Plaintiff's subjective allegations were not credible:

> The claimant has asthma but medical records and testimony show she continues to smoke. Nevertheless, she told a consultative examiner that she was not smoking. Her treating physician reported in 2000 that the asthma was under control . . . a pulmonary function study (PFS) had not shown demonstrable airway obstruction . . . a [later] PFS was interpreted as showing only mild obstruction. . . .
>
> The claimant's description of her limitations exceeds the degree of limitation one would expect to form the medically determinable underlying pathology. She testified to severe knee pain . . . but there is no imaging evidence showing any pathology, and . . . she has not had any medical treatment of the knee since . . . 1995. The consultative examiner reported a non-antalgic gait and no need for an assistive device. Moreover, the back condition is mild according to the MRI, and . . . she had a full range of motion of the hips, ankles and spine, and straight leg raising was negative for pain. Moreover, there were no neurological deficits. (R. 14).

The Court concludes that the evidence in the record supports the ALJ's conclusion regarding Plaintiff's credibility.

Plaintiff also contends that the ALJ's step-three determination was patently wrong because he "failed to determine

- 11 -

the criteria of the listed impairment and compare each individual point with the medical evidence contained in the administrative record." (Supp. Mem. at 16). Plaintiff cites as support Brindisi v. Barnhart, 315 F.3d 783, 786-787 (7th Cir. 2003), a case in which the Seventh Circuit concluded the ALJ inadequately supported its step-three determination.

Defendant initially responds that Plaintiff's reliance on Brindisi is misplaced because unlike Brindisi, here the ALJ "clearly indicated which listings he considered in his step-three analysis, namely 1.00 and 3.00. Moreover, ALJ Boyle discussed Plaintiff's musculoskeletal complaints and the lack of objective findings to support them as well as Plaintiff's benign pulmonary impairments." (Def. Mem. at 6). Further, "there is no other evidence in the record which could have led the ALJ to conclude that Plaintiff's impairments met or equaled a listing." Id. Plaintiff did not assert in the hearing or her supporting memorandum that her conditions met or equaled a specific listing. Further, there is no evidence that Plaintiff's impairments actually meet or equal a listing. To the contrary, the "state agency physicians, who are experts in the disability program, opined that Plaintiff's impairments did not meet or equal a listing . . . . Plaintiff points to no medical evidence which contradicts this conclusion such that any of her conditions met all of the elements of any listing." Id.

Here, as previously discussed, the ALJ articulated the rationale for his conclusions regarding the seriousness of Plaintiff's medical complaints and the credibility determination. The ALJ specifically mentioned two listings that he considered under the step-three analysis. The Court concludes that the evidence in the record supports the ALJ's conclusion.

Plaintiff finally contends that ALJ step-four determination was patently wrong because the ALJ ignored evidence favorable to Plaintiff's condition such as obesity, "dyspnea, thrombocythemia, pneumonia, recent pneumonia, granulomatous disease and airway obstruction" (Supp. Mem. at 17). Plaintiff contends that the ALJ "played doctor" and "succumbed to the temptation to utilize his own medical hunches in lieu of proper medical authority . . . Some if the most important medically demonstrated symptoms expressed by the claimant and supported in the medical record are not mentioned at all. Accordingly, a false picture of Dorothy's RFC and her capacity for work was presented in the hypothetical question." Id. at 18-19, 22.

Defendant responds that the ALJ considered both the objective medical evidence and Plaintiff's subjective complaints in assessing her limitations. As to Plaintiff's complaint about back pain, the ALJ "reasonably considered that the objective findings showed only 'mild' disk bulging with possible 'tiny' central disk protrusion; 'mild' degenerative change causing 'mild' central stenosis;

'minimal if any' foraminal narrowing; asymmetric left side disc bulging . . . at L5-S1 that did not cause significant stenosis but may affect the left S1 nerve root as it exists the thecal sac; and disc dessication (drying) at the T10-11 level without herniation." (Def. Mem. at 7).

The Court concludes that the ALJ considered both Plaintiff's and the VE's testimony at the hearing and conducted a thorough review of the record in making its decision. The ALJ also applied the proper analysis in adhering to the five-part test as is required by the SSA. The Court concludes that there is sufficient evidence in the record to support the ALJ's decision. Accordingly, the Court grants Defendant's motion to affirm the Commissioner's decision, and denies Plaintiff's motion to reverse the Commissioner's decision.

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for an order reversing the Commissioner's decision is **DENIED** and the Defendant's motion for an order affirming the decision is **GRANTED**.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Dated: October 13, 2004